UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY HOMELESS UNION,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY, et al.,<br><br>Defendants. | Case No. 25-cv-04449-HSG<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Pending before the Court is an ex parte application for a temporary restraining order, filed May 27, 2025. Dkt. No. 2. The motion seeks to delay Defendant City of Berkeley's closure of encampments at Ohlone Park, Berkeley, scheduled to begin by May 28, 2025. *See* Dkt. No. 2-5, Ex. A, at 6. The Court **DENIES** the motion.

Plaintiff Berkeley Homeless Union (BHU) initially requested this same relief on May 21, 2025, in *Berkeley Homeless Union v. City of Berkeley*, an earlier filed case in this district related to encampments along 8th and Harrison Streets in Berkeley. *See* Case No. 3:25-cv-01414-EMC, Dkt. No. 21. Judge Chen found that Plaintiff's claims regarding Ohlone Park fell outside the scope of that case because they involve a different location, different facts, and potentially different individuals than those related to the Harrison Street encampment. *See id.*, Dkt. No. 69 at 2. Accordingly, Judge Chen ordered that Plaintiff must file a new civil action to pursue relief related to Ohlone Park. *See id.*

Plaintiff's counsel alleges that after Judge Chen's order was issued, he contacted Defendants' lead counsel on May 23, 2025, to inform him that Plaintiff intended to seek a TRO regarding Ohlone Park, and to request that the parties stipulate to a briefing schedule for the anticipated motion and that Defendants temporarily refrain from clearing any Ohlone Park

encampments. *See* Dkt. No. 2-1 ¶¶ 3–7. Defense counsel purportedly declined Plaintiff's proposals, and in response, Plaintiff's counsel confirmed that the motion would be filed. *See id.* ¶ 8.

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). Such an order may be issued only where the plaintiff has established: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under the Ninth Circuit's sliding scale approach, a plaintiff may alternatively establish that there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the plaintiff," and the other two *Winter* factors are satisfied. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

The Court may issue a temporary restraining order without written or oral notice only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons it should not be required. Fed. R. Civ. P. 65(b)(1).

Here, Plaintiff's request fails because it has not shown serious questions going to the merits of any of its claims. First, regarding Plaintiff's Americans with Disabilities Act ("ADA") claim, Plaintiff largely relies on broad allegations that do not pertain the individuals living in Ohlone Park. Such allegations cannot sustain a finding of likelihood on the merits in this case. The complaint generally alleges that Defendant "discriminates against unhoused individuals by failing to provide adequate notice, time, and assistance to unhoused people with disabilities who are forced to move themselves or their belongings from public space." Compl. ¶ 98. Plaintiff further alleges that Thomas Gregory, Defendant's representative who addresses ADA

accommodation requests, "created unreasonable barriers, in a way that did not address or find a fact intensive finding as to any ADA request." *Id.* ¶ 103. Yet Plaintiff's facts alleged as to the residents of Ohlone Park are extremely limited. According to her declaration, Yesenia Prado, BHU representative, submitted 7 requests for disability accommodations to Defendant on May 24, 2025. *See* Dkt. 2-9 ("Prado Decl.") ¶ 11. The requests were admittedly filed late, after the May 21, 2025, deadline for accommodation requests had passed. *See id.*; Dkt. No. 2-5, Ex. A, at 7. Ms. Prado does not state that this deadline was itself unreasonable, but contends that she filed the requests late because she "only noticed that part of the notice on May 22." *See* Prado Decl. ¶ 11. Plaintiff alleges that in response, Thomas Gregory "without going into an in depth fact finding, denied the requests." Compl. ¶ 89.

But aside from this broad allegation, Plaintiff submits specific facts as to only one of Mr. Gregory's responses to the accommodation requests. *See* Prado Decl., Ex. A. The email exchange Plaintiff attached to the TRO and complaint shows that Mr. Gregory responded on May 25, 2025 (the Sunday before Memorial Day) to Ms. Prado's May 24, 2025, request on behalf of Richard Weaber. *See id.* at 3. Defendant stated that he had a prior conversation with Mr. Weaber on May 15, 2025, in which he did not make an accommodation request, and rejected an offer of packing assistance. *Id.* Mr. Gregory did not accede to Ms. Prado's request to waive the City's requirement to provide third-party verification from a qualified professional regarding the nexus between Mr. Weaber's disabilities and his inability to comply with the City's order to vacate the encampment. *Id.* Mr. Gregory also stated that the requests for physical relocation or transportation services fell outside the scope of reasonable accommodations. *Id.* He concluded his response by saying, "That being said, if you have additional information or alternative proposals you would like us to consider, I welcome further discussion." *Id.* at 4. Plaintiff responded on the evening of May 26, 2025, again requesting that Defendant waive the medical verification requirement and requesting that Defendant provide assistance identifying ADA accessible shelter options. *Id.* at 5. Plaintiff alleges that Defendant did not respond as of the filing of the complaint approximately twelve hours later.

Other than the exchange above, Plaintiff has not attached any other evidence of, or made

3

specific allegations describing, the accommodation requests that were submitted and Defendant's responses. And based on this request, Plaintiff has not met its burden to show that Defendant's response raises serious questions going to the merits of its ADA claim. "The ADA requires 'only 'reasonable modifications' that would not fundamentally alter the nature of the service provided.'" *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir. 2022) (citing *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)). "In no event is the entity required to undertake measures that would impose an undue financial or administrative burden or effect a fundamental alteration in the nature of the service. . . . Public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *See Where Do We Go Berkeley*, 32 F.4th at 862 (internal citations and quotation marks omitted). Plaintiff does not explain how, within this framework, the ADA requires Defendant to agree to the specific requests that it denied. For example, Plaintiff does not explain how the ADA requires Defendant to provide assistance to unhoused individuals to identify shelter options. Similarly, Plaintiff does not explain how or why Defendant's request for medical verification violates the ADA. Plaintiff also does not explain how Defendant's response to Plaintiff's late-filed requests failed to provide adequate notice of the closure to Plaintiff's members in violation of the ADA. Without any allegations or arguments addressing these facts, Plaintiff's conclusory assertions cannot meet its burden to raise serious questions going to the merits of its claims.

Second, Plaintiff's Fourth Amendment claim is similarly conclusory and fails to connect the specific allegations relevant to this case with any legal authority showing that it is likely to succeed on the merits here. Plaintiff alleges generally that the City of Berkeley refuses to store the property of unhoused people after encampment sweeps, citing incidents in which this allegedly occurred in January 2024 and November 2024. *See* Compl. ¶¶ 106–113. Plaintiff argues that the Ninth Circuit held that unhoused people "have a legitimate expectation of privacy in their property," but cites a non-binding district court case, *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D. Cal. 2011). *See id.* ¶ 108. Plaintiff's failure to cite any controlling legal authority and explain how such authority supports its claim precludes any entitlement to extraordinary relief.

4

Finally, the Court finds that Plaintiff has not raised serious questions going to the merits of its state-created danger claim under 42 U.S.C. § 1983. "To succeed on a state-created danger claim, a plaintiff must establish that (1) a state actor's affirmative actions created or exposed him to an actual, particularized danger [that he] would not otherwise have faced, (2) that the injury he suffered was foreseeable, and (3) that the state actor was deliberately indifferent to the known danger." *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023) (quotations omitted). Here, Plaintiff offers little more than conclusory assertions and a recitation of these elements. Plaintiff takes issue with Berkeley's broad efforts to clear encampments across the city, and urges that unhoused people are being "pushed into more and more dangerous living situations." *See* Dkt. No. 2 ¶ 67. Plaintiff further notes that Ohlone Park has public restrooms and water fountains and is close to other resources. *See id.* ¶¶ 68–76. But critically, Plaintiff has not explained why requiring individuals to leave Ohlone Park—even if further from such resources—rises to the level of a state-created danger. *See Sacramento Homeless Union v. City of Sacramento*, 115 F.4th 1149, 1154–55 (9th Cir. 2024) (Nelson, J., dissenting from denial of rehearing en banc).

Because Plaintiff has not at least raised serious questions going to the merits of its complaint, it is not entitled to the extraordinary relief sought here (especially where Plaintiff gave the Court well less than 24 hours to consider the request, which also realistically foreclosed Defendant's opportunity to be heard before the motion was decided). In addition, the Court notes that an underlying and consistent premise of Plaintiff's application is that Defendant could, and thus must, simply allow its members and others to continue to live in Ohlone Park indefinitely under certain conditions. *See, e.g.*, Dkt. No. 1 at ¶ 132 ("For example, the City of Berkeley could allow BHU members to move to a particular part of the park that is reasonably close to the bathrooms and water fountains to accommodate their disabilities."). In the Court's preliminary view, this position simply lacks any support in the law.

Accordingly, Plaintiff's motion for a temporary restraining order, Dkt. No. 2, is **DENIED.** Defendants are further **ORDERED** to file a response to Plaintiff's motion by noon on Thursday, May 29, 2025. A hearing on Plaintiff's request for preliminary injunction is set for Thursday, May 29, 2025, at 3:00 p.m. in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA. All parties

shall attend in-person unless otherwise ordered.

The Clerk is directed to serve this Order on Plaintiff by email at berkeley.homeless.union@gmail.com.  The Clerk is further directed to serve this Order; the complaint (Dkt. No. 1), and the ex parte application for temporary restraining order and preliminary injunction (Dkt. No. 2) on Defendants at mshapp@berkeleyca.gov, pbuddenhagen@berkeleyca.gov, tgregory@berkeleyca.gov, and pradu@berkeleyca.gov.

**IT IS SO ORDERED.**

Dated: May 27, 2025

HAYWOOD S. GILLIAM, JR.
United States District Judge